IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| WIRELESS COMMUNICATIONS MOBILE LLC,<br><br>  Plaintiff,<br><br>v.<br><br>ADT LLC<br><br>  Defendant. | CIVIL ACTION NO. _____<br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Wireless Communications Mobile LLC ("Plaintiff"), by and through its attorneys, for its Complaint for patent infringement against ADT LLC dba ADT Security Services ("ADT" or "Defendant"), and demanding trial by jury, hereby alleges as follows:

### I. NATURE OF THE ACTION

1. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 271, *et seq.*, to enjoin and obtain damages resulting from Defendant's unauthorized use, sale, and offer to sell in the United States of products and/or systems that infringe Plaintiff's United States patent, as described herein.

2. Defendant manufactures, provides, uses, sells, offers for sale, imports, and/or distributes infringing products; and encourages others to use its products and services in an infringing manner.

3. Plaintiff seeks past and future damages and prejudgment and post-judgment interest for Defendant's infringement of U.S. Patent 9,125,079 (the "'079 patent").

1

## II.     PARTIES

4.      Plaintiff Wireless Communications Mobile LLC is a limited liability company organized and existing under the laws of Delaware.  Its principal place of business is 200 Continental Dr., Suite 401, Newark, DE 19713.

5.      On information and belief, Defendant ADT is a for-profit limited liability company formed under the laws of Delaware with its principal place of business in Boca Raton, Florida.

6.      On information and belief, Defendant ADT has a place of business at 4706 DC Drive, Tyler, Texas 75701, and a registered agent for service of process in Texas at CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

7.      On information and belief, Defendant ADT merged with Brink's Home Security, Inc., in or about 2010, and continues to operate the Brink's Home Security brand.

## III.     JURISDICTION AND VENUE

8.      This is an action for patent infringement which arises under the patent laws of the United States, in particular, 35 U.S.C. §§ 271, 281, 283, 284, and 285.

9.      This Court has exclusive jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

10.     On information and belief, Defendant is subject to this Court's specific and general personal jurisdiction, pursuant to due process and the Texas Long-Arm Statute, due at least to its business in this forum, including at least a portion of the infringements alleged herein. Furthermore, Defendant is subject to this Court's specific and general personal jurisdiction because it has a place of business at 4706 DC Drive, Tyler, Texas 75701.

11. Without limitation, on information and belief, within this state, Defendant has used the patented inventions thereby committing, and continuing to commit, acts of patent infringement alleged herein. In addition, on information and belief, Defendant has derived revenues from its infringing acts occurring within the Eastern District of Texas and Texas. Further, on information and belief, Defendant is subject to the Court's general jurisdiction, including from regularly doing or soliciting business, engaging in other persistent courses of conduct, and deriving substantial revenue from goods and services provided to persons or entities in Eastern District of Texas and Texas.  Further, on information and belief, Defendant is subject to the Court's personal jurisdiction at least due to its sale of products and/or services within the Eastern District of Texas. Defendant has committed such purposeful acts and/or transactions in the Eastern District of Texas such that it reasonably should know and expect that it could be haled into this Court as a consequence of such activity.

12. Venue is proper in this district under 28 U.S.C. § 1400(b). Defendant has a place of business at 4706 DC Drive, Tyler, Texas 75701. On information and belief, from and within this District Defendant has also committed at least a portion of the infringements at issue in this case. 7. For these reasons, personal jurisdiction exists and venue is proper in this Court under 28 U.S.C. § 1400(b).

13. Defendant has transacted business in this judicial district and has committed acts within this judicial district giving rise to this action, directly and/or through subsidiaries; and/or Defendant has committed and/or induced acts of patent infringement in this Judicial District directly and/or through subsidiaries.

## IV.   FACTUAL BACKGROUND

14. Plaintiff is the owner of the entire right, title, and interest of the '079 patent, including the right to recover for past infringement, covering wireless monitoring device technologies used in various wireless monitoring products, including the '079 patent.

15. The '079 patent, entitled "PROGRAMMABLE COMMUNICATOR," was filed on Aug. 8, 2014 and issued on Sep.1,2015.

16. The '079 patent is a continuation of application No. 14/175,171, filed on Feb. 7, 2014, now Pat. No. 8,872,624, which is a continuation of application No. 13/934,763, filed on Jul. 3, 2013, now Pat. No. 8,648,717, which is a continuation of application No. 13/801,773, filed on Mar. 13, 2013, now Pat. No. 8,542,111, which is a continuation of application No. 12/538,603, filed on Aug. 10, 2009, now Pat. No. 8,094,010, which is a continuation of application No. 11/329,212, filed on Jan. 10, 2006, now Pat. No. 7,583,197, which is a continuation of application No. 10/296,571, filed as application No. PCT/EPOl/05738 on May 18, 2001, now abandoned.

## V.   COUNTS OF PATENT INFRINGEMENT

17. Plaintiff alleges that Defendant has infringed and continues to infringe the '079 patent (the "Asserted Patent").

### COUNT ONE
### INFRINGEMENT OF U.S. PATENT 9,125,079

18. Plaintiff incorporates by reference the allegations in all preceding paragraphs as if fully set forth herein.

19. The '079 Patent provides a technical solution, by disclosing a technical data monitoring device establishing a wireless communication link with a programmable interface of a programmable cellular telephone comprising "a new and improved communicating apparatus

4

to address the communication needs of children and elderly persons and for programmable data tags for monitoring the status of associated technical equipment." '079 Patent, Col. 9, Lns. 29 – 33.

Direct Infringement

20. On information and belief, Defendant, without authorization or license from Plaintiff, have been and is presently directly infringing the '079 Patent, either literally or equivalently, as infringement is defined by 35 U.S.C. § 271(a), including through making, using, (including for testing purposes), selling and offering for sale articles infringing one or more claims of the '079 Patent. Defendant is thus liable for direct infringement pursuant to 35 U.S.C. § 271(a). Exemplary infringing instrumentalities include the technical data monitoring devices described at https://www.ADT.com/products/smart-hub; https://www.adt.com/home-security; and https://www.adt.com/smarthome. Additional exemplary infringing instrumentalities include the technical data monitoring devices described at https://brinkshome.com/shop/systems/brinks-home-complete-with-video (collectively the "ADT Accused Instrumentalities").

21. On information and belief, the ADT Accused Instrumentalities are a non-limiting example that meets all limitations of claim 1 of the '079 Patent, either literally or equivalently.

22. Claim 1 of the '079 patent states:

> A technical data monitoring device for use with a wireless data monitoring network, the technical data monitoring device comprising:
> (a) a wireless communications circuit, the technical data monitoring device configured to establish a wireless communication link with a programmable interface of a programmable cellular telephone,
>
> (b) the technical data monitoring device configured to send and/or receive wireless packet switched data transmissions,
>
> (c) the technical data monitoring device having an associated status condition,
>
> (d) the technical data monitoring device configured to generate data and send data over the wireless communication link for processing by the programmable cellular telephone

periodically or in response to instructions received in a wireless packet switched message from the programmable cellular telephone,

(e) wherein the data from the technical data monitoring device is (1) sent to be processed and displayed by the programmable cellular telephone and/or (2) sent to be processed and forwarded by the programmable cellular telephone to an Internet website via one or more General Packet Radio Service (GPRS), or other wireless packet switched data messages,

(f) wherein the technical data monitoring device is configured to form part of the wireless data monitoring network in communication with the programmable cellular telephone; and

(g) at least one technical device or system, the at least one technical device or system being at least one selected from the group consisting of a pressure sensor, a heat sensor, a mechanical displacement sensor, a speed sensor, a temperature sensor, a sound threshold sensor, a movement sensor, an electrical power sensor, an infra-red radiation detector, a proximity detection sensor, a heart rate sensor, a water sensor, a location processing module, a GPS Global Positioning Systems module, a sensor for detecting any physical characteristic of the human skin, and a health monitoring system of one or more sensors, a sports performance monitoring system of one or more sensors, a domestic appliance monitoring system of one or more sensors, and a home security monitoring system of one or more sensors,

(h) wherein the data sent by the technical data monitoring device represents at least one of pressure data, heat data, mechanical displacement data, speed data, temperature data, sound threshold data, movement data, electrical power data, infra-red radiation data, proximity detection data, heart rate data, body temperature data, health data, water detection data, location data, GPS data, sports performance data, domestic appliance data, and home security data.

23. Specifically, Defendant makes, uses, sells, offers for sale its ADT Accused Instrumentalities – e.g. technical data monitoring devices for use with a wireless data monitoring network. These devices have wireless communications circuits (usually 802.11) and are configured to connect wirelessly with a programmable cellular telephone. *See, e.g.,* https://www.ADT.com/products/smart-hub ("ADT home automation products give you the ability to arm and disarm your security system, set your thermostat, and turn your home lights on and off from your smartphone. Compare our automated home security system options below.") *See* https://www.adt.com/home-security ("ADT is the leader in home security. You get the

benefit of our more than 140 years of experience every day. Our highly skilled home security experts can custom-design home security systems to meet your exact needs.") For example, ADT technical data monitoring device such Home Security and Home Automation systems uses wireless network (Z-Wave) to monitor technical data and communicate with other wireless programmable devices. These devices have wireless communications circuits. *See* https://www.adt.com/smarthome  ("ADT uses Z-wave wireless technology to connect your smart devices, and lets you control all of them from the seamlessly integrated ADT Pulse app. In seconds, you can connect your device to your network, and communicate with all your Z-Wave devices. Then you can control them through your computer or smart devices from almost anywhere in the world.") The ADT technical data monitoring devices use the wireless communications circuit to establish links to a programmable interface of a programmable cellular telephone, for example, a mobile app ("ADT Pulse App") running on a smartphone.

24. According to claim 1(b) of the '079 Patent, The ADT Accused Instrumentalities are configured to send and/or receive wireless packet switch data transmissions.  The device is configured to send and/or receive wireless packet switched data (such as critical status information, alerts, event notification alarm and/or emergency features). The wireless network (Z-Wave) sends and/or receives data in the form of packet switched data transmission. *See* https://www.adt.com/smarthome  ("ADT uses Z-wave wireless technology to connect your smart devices, and lets you control all of them from the seamlessly integrated ADT Pulse app. In seconds, you can connect your device to your network, and communicate with all your Z-Wave devices. Then you can control them through your computer or smart devices from almost anywhere in the world.") The ADT technical data monitoring devices use the wireless

7

communications circuit to establish links to a programmable interface of a programmable cellular telephone, for example, a mobile app ("ADT Pulse App") running on a smartphone.

25. According to claim 1(c) of the '079 Patent, the ADT Accused Instrumentalities have many status conditions, including, for example: armed, not armed, alerts, event notification alarm and/or emergency features *etc*. *See* https://www.adt.com/smarthome.

26. According to claim 1(d) of the '079 Patent, the ADT Accused Instrumentalities are configured to generate data and to send data over the wireless communication link for processing by the programmable cellular telephone. The ADT Accused Instrumentalities are also configured to generate data (alarm and notifications) associated with sensors ( such as door/window sensor, motion detectors, glass break sensors, smoke detector, security keypads, CO sensor, water sensor, flood/freeze sensor, and/or panic buttons) and send it over the wireless communication link for processing by the programmable cellular telephone. ADT Pulse App which when installed on the programmable cellular telephone (such as smartphones) connects over wireless communication network with the panel to send and/or receive notifications and alerts. *See* https://www.adt.com/life-safety.

27. According to claim 1(e) of the '079 Patent, the sent data is either displayed by the programmable cellular telephone and/or sent to an Internet website via GPRS or other wireless packet switched protocols. The data (alarm and/or notifications) associated with the Frontpoint products is sent to the programmable cellular telephone and displays the data on cellular telephone via ADT Pulse App. *See* https://www.adt.com/pulse

28. According to claim 1(f) of the '079 Patent, the ADT Accused Instrumentalities are configured as part of the wireless data monitoring network along with the programmable cellular telephone. *See Id.* According to claim 1(g) of the '079 Patent, the ADT Accused

Instrumentalities include at least a home security monitoring system of one or more sensors (such as door/window sensor, motion detectors, glass break sensors, smoke detector, security keypads, CO sensor, water sensor, flood/freeze sensor, and/or panic buttons). *See* https://www.adt.com/life-safety ("ADT Labs tests and certifies every Life Safety device we install to ensure that, if there's ever a hazard or event, we know about it quickly. This allows our monitoring centers to act fast to alert you and emergency services to address any danger to you or your home, night or day, home or away.")

29. According to claim 1(g) of the '079 Patent, the ADT technical devices and system consist of many members of this group, including at least a home security monitoring system of one or more sensors (such as door/window sensor, motion detectors, glass break sensors, smoke detector, security keypads, CO sensor, water sensor, flood/freeze sensor, and/or panic buttons). *See* https://www.adt.com/life-safety ("ADT Labs tests and certifies every Life Safety device we install to ensure that, if there's ever a hazard or event, we know about it quickly. This allows our monitoring centers to act fast to alert you and emergency services to address any danger to you or your home, night or day, home or away.")

30. According to claim 1(h) of the '079 Patent, the data sent by the technical data monitoring device represents at least home security data associated with large range of sensors which integrates with at least one of the sensors (such as door/window sensor, motion detectors, glass break sensors, smoke detector, security keypads, CO sensor, water sensor, flood/freeze sensor, and/or panic buttons). *See Id*.

31. Further, Defendant makes, uses, sells, offers for sale its Brink's brand ADT Accused Instrumentalities – *e.g.* technical data monitoring device for use with a wireless data monitoring network. *See, e.g.*, https://brinkshome.com/shop/systems/brinks-home-complete-

with-video ("Our most popular security system plus the power of video. The HD Indoor Camera detects motion, automatically records during alarms, and lets you view 24/7 live video on your smartphone.") For example, Brink's Home Security technical data monitoring device such as Nest Secure and Brinks Home Touch uses wireless network (such as WiFi, Z-Wave Plus, dual band 802.11 a/b/g/n/ac, LTE, Bluetooth low Energy (BLE) 4.0 and/or S-Line Encrypted 319.5 MHz) to monitor technical data and communicate with other wireless programmable devices. These devices have wireless communications circuits. *See id.* ("Want to add a flood sensor? A smart door lock? Your system can act as a hub for up to 119 smart home devices, and can be controlled via Google Home, Amazon Alexa, Apple TV, and more.") The Brink's Home Security technical data monitoring devices use the wireless communications circuit to establish links to a programmable interface of a programmable cellular telephone, for example, a mobile app ("ASAPer") running on a smartphone. ("Now you can resolve alarms faster than ever with ASAPer, our patented interactive messaging hub for home security systems. When an alarm occurs, ASAPer provides a chat room for call list members to resolve the issue.") *See* https://help.brinkshome.com/hc/en-us/articles/225675047-What-is-ASAPer-

32. According to claim 1(b) of the '079 Patent, Brink's brand Accused Instrumentalities are configured to send and/or receive wireless packet switch data transmissions. Networks such as WiFi, Z-Wave Plus, dual band 802.11 a/b/g/n/ac, LTE, Bluetooth low Energy (BLE) 4.0 and/or S-Line Encrypted 319.5 MHz) send and/or receive data in the form of packet switched data transmission. *See* https://brinkshome.com/shop/systems/brinks-home-complete-with-video.

33. According to claim 1(c) of the '079 Patent, the ADT Accused Instrumentalities have many status conditions, including, for example: armed, not armed, alerts, event notification alarm and/or emergency features etc. *See id.*

34. According to claim 1(d) of the '079 Patent, the ADT Accused Instrumentalities are configured to generate data and to send data over the wireless communication link for processing by the programmable cellular telephone. The device is also configured to generate data (alarm and notifications) associated with sensors such as (wireless door sensors, wireless motion sensor, indoor camera with night vision SkyBell slim line video doorbell and/or flood/freeze sensor) and send it over the wireless communication link for processing by the programmable cellular telephone. See id. ASAPer which when installed on the programmable cellular telephone (such as smartphones) connects over wireless communication network with the panel to send and/or receive notifications and alerts. *See* https://help.brinkshome.com/hc/en-us/articles/225675047-What-is-ASAPer-.

35. According to claim 1(e) of the '079 Patent, the sent data is either displayed by the programmable cellular telephone and/or sent to an Internet website via GPRS or other wireless packet switched protocols. The data (alarm and/or notifications) associated with the Brink's Home Security products is sent to the programmable cellular telephone and displays the data on cellular telephone via ASAPer. *See id.*

36. According to claim 1(f) of the '079 Patent, the ADT Accused Instrumentalities are configured as part of the wireless data monitoring network along with the programmable cellular telephone. *See id.*

37. According to claim 1(g) of he '079 patent, the Brink' brands ADT Accused Instrumentalities consist of many members of this group, including at least a home security

monitoring system of one or more sensors (wireless door sensors, wireless motion sensor, indoor camera with night vision SkyBell slim line video doorbell and/or flood/freeze sensor).  *See* https://brinkshome.com/shop/systems/brinks-home-complete-with-video ("Now you can resolve alarms faster than ever with ASAPer, our patented interactive messaging hub for home security systems.  When an alarm occurs, ASAPer provides a chat room for call list members to resolve the issue.")  *See* https://help.brinkshome.com/hc/en-us/articles/225675047-What-is-ASAPer-.

38. According to claim 1(h) of the '079 Patent, the data sent by the technical data monitoring device represents at least home security data associated with large range of sensors which integrates with at least one of the sensors (wireless door sensors, wireless motion sensor, indoor camera with night vision SkyBell slim line video doorbell and/or flood/freeze sensor).  *See* https://brinkshome.com/shop/systems/brinks-home-complete-with-video.

Post-Suit Willful Infringement

39. Defendant has had actual knowledge of the '079 Patent at least as of service of this Complaint.

40. Notwithstanding this knowledge, Defendant continues to knowingly or with reckless disregard willfully infringe the '079 Patent.  Defendant has thus had actual notice of infringement of the '079 Patent as of the filing of this complaint, and continue to act despite an objectively high likelihood that its actions constitute infringement of Plaintiff's valid patent rights, either literally or equivalently.

41. This objective risk was either known or so obvious that it should have been known to Defendant.  Accordingly, Plaintiff seeks enhanced damages and reimbursement of its reasonable attorney fees pursuant to 35 U.S.C. §§ 284 and 285.

Indirect Infringement

42. Defendant is knowingly inducing their customers and/or end users to directly infringe the '079 Patent, with the specific intent to encourage such infringement, and knowing that the induced acts constitute patent infringement, either literally or equivalently.

43. Defendant's inducement includes, for example, providing data sheets, technical guides, demonstrations, software and hardware specifications, installation guides, and other forms of support that induce its customers and/or end users to directly infringe the '079 Patent. The ADT Accused Instrumentalities are designed in such a way that when they are used for their intended purpose, the user infringes the '079 Patent, either literally or equivalently. Defendant knows and intends that customers that purchase the ADT Accused Instrumentalities will use those products for their intended purpose. For example, Defendant's United States website: https://www.ADT.com/products/smart-hub, instructs customers to use the ADT Accused Instrumentalities in numerous infringing applications. In addition, Defendant specifically intends that its customers, such as United States distributors, retailers and consumer product companies, will import, use, and sell infringing products in the United States in order to serve and develop the United States market for Defendant's infringing products.

44. As a result of Defendant's infringement, Plaintiff has suffered monetary damages, and is entitled to an award of damages adequate to compensate it for such infringement which, by law, can be no less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## VI. NOTICE

45. Plaintiff has complied with the notice requirement of 35 U.S.C. § 287 and does not distribute, sell, offer for sale, or make products embodying the Asserted Patent.

## VII. JURY DEMAND

46. Plaintiff demands a trial by jury of all matters to which it is entitled to trial by jury, pursuant to FED. R. CIV. P. 38.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and seeks relief against Defendant as follows:

- A. That the Court determine that one or more claims of the Asserted Patent is infringed by Defendant, both literally and under the doctrine of equivalents;
- B. That the Court determine that one or more claims of the Asserted Patent is indirectly infringed by Defendant;
- C. That the Court award damages adequate to compensate Plaintiff for the patent infringement that has occurred, together with prejudgment and post-judgment interest and costs, and an ongoing royalty for continued infringement;
- D. That the Court permanently enjoin Defendant pursuant to 35 U.S.C. § 283;
- E. A finding that this case is exceptional pursuant to 35 U.S.C. § 285;
- F. That the Court order Defendant to reimburse Plaintiff for its reasonable attorney fees pursuant to 35 U.S.C. § 285;
- G. That the Court determine that Defendant's infringements were willful;
- H. That the Court award enhanced damages against Defendant pursuant to 35 U.S.C. § 284; and

    I.    That the Court award such other relief to Plaintiff as the Court deems just and proper.

Dated: April 11, 2019

Respectfully Submitted,

 /s/ William M. Parrish
William M. Parrish
*Lead Attorney*
Texas State Bar No. 15540325
Minghui Yang
Texas State Bar No. 24091486
HARDY PARRISH YANG, LLP
Spicewood Business Center
4412 Spicewood Springs Rd. Suite 202
Austin, Texas 78759
(512) 520-9407
bparrish@hpylegal.com
myang@hpylegal.com

*Attorneys for Plaintiff*
*Wireless Communications Mobile LLC*